IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|                                             |   |                              |
|---------------------------------------------|---|------------------------------|
| **Carlos Roberto Garcia Odon,**             | : |                              |
|                                             | : | **Case No. 2:26-cv-00088**   |
| **Petitioner,**                             | : |                              |
| **v.**                                      | : | **Judge Graham**             |
|                                             | : |                              |
| **Todd Blanche,** Acting                    | : | **Magistrate Judge Vascura** |
| Attorney General, United                    | : |                              |
| States Department of Justice,               | : |                              |
| *et al.*,                                   | : |                              |
|                                             | : |                              |
| **Respondents.**                            | : |                              |

**OPINION & ORDER**

This matter is before the Court upon a petition for habeas corpus filed by an immigrant detainee, Carlos Roberto Garcia Odon ("Odon"), pursuant to 28 U.S.C. § 2241. Odon challenges the lawfulness of his detention under the Immigration and Nationality Act ("INA"), the Due Process Clause of the Fifth Amendment to the U.S. Constitution, and the Equal Protection Clause of the Fourteenth Amendment. Doc. 1. Respondents argue that the petition must be denied because Odon has failed to exhaust his administrative remedies, that this Court does not have jurisdiction over the petition, and that, regardless, Odon is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

For the reasons that follow, the Court **DISMISSES** the petition.

**Background**

The basic facts are not in dispute. Odon is native to and a citizen of Venezuela. On or about February 1, 2022, Odon entered the United States without permission

[1]

or parole near Hidalgo, Texas. He was promptly detained upon entry and then released on his own recognizance. Odon received a notice to appear for Section 240 Removal Proceedings. Odon timely filed an application for asylum, which is currently pending.

As a condition of his release in February 2022, Odon was required to check in with his local ICE office. Odon represents that he attended all scheduled check-ins. On January 23, 2026, Odon appeared for one such check-in, at which point he was detained by ICE and held at the Butler County Correctional Complex, where he remains detained today.

The Immigration Judge held a hearing on Odon's asylum application on February 10, 2026. Respondents argued that Odon's application should be terminated because he can be removed to Ecuador as a safe third country alternative. Respondents report that the Immigration Judge "took the presentations under advisement, and a decision is pending." Doc. 11, # 61. More recently, Odon's counsel informed the Court that he requested a bond hearing before an Immigration Judge, who in turn denied bond based on jurisdictional grounds, but did not conduct an individualized assessment of Odon's flight risk or dangerousness. Doc. 13.

## Discussion

The petition before the Court is one of many similar 28 U.S.C. § 2241 petitions recently filed in this district and across the country. Respondents present three (3) arguments for why it must be denied. First, they argue that Odon has failed to exhaust his administrative remedies because he has not requested a bond hearing

[2]

with the Immigration Judge, notwithstanding *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) (holding that immigration judges lack authority to hear bond requests or to grant bond to noncitizens who are present in the United States without admission). Second, they argue that this Court lacks jurisdiction over the petition. And third, they argue that the relevant authority is 8 U.S.C. § 1225(b)(2)(A) which subjects Odon to mandatory detention, rather than § 1226, which Odon invokes and which would afford him a bond hearing. Odon's reply to Respondents' Return of Writ only addresses the first argument.

### Prudential Exhaustion[1]

When no statute or rule mandates administrative exhaustion, whether it is required rests with the discretion of the District Court. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). The Sixth Circuit has recognized that exhaustion may not be required when the administrative remedy "does not serve the purposes behind the exhaustion doctrine[ ]," when "administrative remedies are inadequate or not efficacious," or "where pursuit of administrative remedies would be a futile gesture." *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981) (citations omitted).

On the other hand, courts in this circuit have looked to the Ninth Circuit's test as to when prudential exhaustion *should* be required. Under that test, exhaustion is favored when:

---

[1] As noted, *supra*, Odon has since requested a bond hearing before an Immigration Judge, who declined to issue bond based on jurisdictional grounds. *See* doc. 13. This development likely moots Respondents' prudential exhaustion argument, but in the absence of Respondents' express waiver of the same, the Court sets forth why no exhaustion is required.

[3]

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Jordan Ramirez Quintana, Petitioner, v. Robert K. Lynch, et al., Respondents.*, No. 1:25-CV-919, 2026 WL 746359, at *5 (S.D. Ohio Mar. 17, 2026) (citing *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025)).

In the instant case, administrative exhaustion is not required by the text of any applicable statute or rule. And on the question of whether the Court should nevertheless impose an exhaustion requirement, the Court agrees with other decisions in this district holding that the relevant factors cut against such a requirement in these circumstances. *See, e.g., Quintana*, 2026 WL 746359, at *5 ("Here, all three factors weigh against requiring exhaustion."); *Velasco-Sanchez v. Raycraft*, No. 2:25-CV-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025) (same); *Lopez-Campos*, 797 F. Supp. 3d at 778 (same); *Edahi v. Lewis*, No. 4:25-CV-129-RGJ, 2025 WL 3466682, at *4 (W.D. Ky. Nov. 27, 2025) (same); *Xiao v. Raycraft*, No. 26-10337, 2026 WL 608337, at *4 (E.D. Mich. Mar. 4, 2026) (same).

First, agency expertise is not necessary to develop a proper record. There are no factual disputes, and "this Court, not the agency, has the expertise to engage in statutory interpretation and analyze constitutional claims." *Xiao*, 2026 WL 608337, at *4. Second, and more importantly, requiring administrative exhaustion would be "a futile gesture." *Shawnee Coal Co.*, 661 F.2d at 1093. Despite the Respondents'

[4]

contention that Odon must seek a bond hearing with an immigration judge ("IJ"), the Respondents take the concurrent position that an IJ can provide no such relief to a detainee, like Odon, to whom mandatory detention is applicable under 8 U.S.C. § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025) (holding IJs lack authority to hear request for bond when detainee is subject to mandatory detention under 1225(b)(2)(A)). Therefore, imposing the doctrine of prudential exhaustion would be plainly imprudent in the instant case, and the Court declines to do so.

## Jurisdiction

Pursuant to 28 U.S.C. § 2241, this Court has broad jurisdiction to issue writs of habeas corpus to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Nevertheless, Respondents contend that this Court lacks jurisdiction to rule on the habeas petition before it. Specifically, Respondents cite 8 U.S.C. § 1252(e)(3), (g), (b)(9), each as independent bars to this Court's jurisdiction to review Odon's claims. However, the Court agrees with the prevailing view that "While Congress undoubtedly has limited district court review in the immigration context, the Court nonetheless has jurisdiction to review detention-related challenges in habeas." *Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-CV-831, 2025 WL 3628229, at *2 (S.D. Ohio Dec. 15, 2025).

In a "body of caselaw that grows larger by the day," Respondents' interpretations of § 1252's jurisdiction-stripping provisions have found little purchase. *Azalyar v. Raycraft*, 814 F. Supp. 3d 926, 931 (S.D. Ohio 2026). "Numerous

[5]

courts, including this one, have held that federal district judges retain jurisdiction under § 2241 to review habeas claims by noncitizen detainees, either to challenge pre-removal detention as unconstitutional or to raise legal questions regarding the government's statutory authority to detain them." *Id.* at 930–31 (collecting cases). In sum, "[j]urisdiction is well established under these circumstances, and no further review is required." *Id.* at 931 (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001)).

### Merits of the Petition

Absent jurisdictional bars or an administrative exhaustion requirement, the Court proceeds to the merits of Odon's claim. Two issues must be addressed. First, the Court must consider the relevant statutes and the parties' competing interpretations of the same. Second, if the Court agrees with Respondents' statutory interpretation, it must then consider whether Odon's detention nevertheless offends his due process rights under the Constitution.

### I.      Odon is an "alien seeking admission."

The petition before the Court is one of many similar petitions filed by aliens across the country. At root, in all such petitions, is whether the petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A), or if the petitioner is instead subject to discretionary detention pursuant to § 1226(a) and thus entitled to a bond hearing.

Under § 1225(b)(2)(A), an "alien seeking admission… shall be detained" if the "examining immigration officer determines that [he] is not clearly and beyond a doubt

[6]

entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Meanwhile, under § 1226(a), an alien "may be arrested or detained pending a decision on whether the alien is to be removed from the United States," and, so long as the alien has not committed certain criminal offenses enumerated in § 1226(c), the alien may be entitled to bond. 8 U.S.C. § 1226(a).

The statutory scheme does not define the phrase "alien seeking admission," but it *does* define "applicant for admission," as an "alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). And "admission," in this sense, "specifically means *lawful* entry, not just any presence in the United States." *Coronado*, 2025 WL 3628229 at *8 (citing 8 U.S.C. § 1101(a)(13)(A)). Odon, like the many similarly situated individuals bringing similar challenges, fits cleanly into this definition of an "applicant for admission": he is present in the United States and he has not been lawfully admitted; furthermore, with his application for asylum currently pending, he is literally an *applicant* for lawful admission.[2] So, many courts have viewed the central issue as whether an "applicant for admission," like Odon, is likewise an "alien seeking admission," and thus subject to mandatory detention. 8 U.S.C. § 1225(b)(2)(A). On this question, the Court holds that someone who is "an 'applicant for admission' is also necessarily 'seeking admission,'" following the analysis of Judge Cole in *Coronado*. 2025 WL 3628229 at *8.

---

[2] Petitioner does not specifically challenge this conclusion except to argue that "Courts across the country have repeatedly rejected Respondents' interpretation, holding that § 1225 applies only to non-citizens who are *actively seeking* admission." Doc. 1, # 4 (citing *Bautista v. Santacruz*, No. 5:25-cv-01873 (C.D. Cal Nov. 20, 2025).

This "more natural reading" (*id.*) leaves Odon with a tough row to hoe. Nevertheless, he contends that historical practice and Supreme Court precedent establish that § 1225 applies only to "those seeking admission [at or near the border]." Doc. 1, # 4. But, regardless of historical practice, that interpretation asks the Court to find nebulous temporal and geographic limitations on the reach of the statute, despite no such requirement in the text.

Odon cites *Jennings v. Rodriguez*, 583 U.S. 281, 288, 138 S. Ct. 830, 837, (2018) for the proposition that § 1226 governs "the process of arresting and detaining [non-citizens] once inside the United States." Doc. 1, # 3. But, against that argument, the Court finds Judge Cole's reasoning in *Coronado* persuasive:

> On this Court's reading, the portion of *Jennings* on which Coronado (and courts like those cited above) relies in fact refers only to those aliens who are in the country *lawfully*. *See* 583 U.S. at 288, 138 S.Ct. 830. Consider the opening sentence to that section of the opinion: "Even once inside the United States, aliens do not have an absolute right to remain here." *Id.* That phrasing—referring to aliens who do not have an "absolute right" to remain—suggests that the sentence is directed at aliens whose entry into this country at least created a contingent right to remain—i.e., those who were lawfully admitted. Aliens who entered the country unlawfully, by contrast, have no *right*, contingent or otherwise, to be here based on the mere fact of their (unlawful) entry.

2025 WL 3628229 at *10. Therefore, the Court finds that § 1225(b)(2)(A) indeed applies to Odon, and thus he is subject to mandatory detention.

## II.    Odon has not Established a Due Process Violation.

Respondents argue that Odon's detention without bond is constitutionally permissible and does not offend Odon's due process rights. Doc. 11, # 75; *see also*

[8]

*Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 2500, 150 L. Ed. 2d 653 (2001) ("the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). On this point, Supreme Court precedent is clear: "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S. Ct. 1883, 1891, 48 L. Ed. 2d 478 (1976).

In *Demore v. Kim*, 538 U.S. 510, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003), the Supreme Court held that mandatory detention pending removal proceedings does not offend due process. Rejecting the argument that detention pending removal proceedings is "indefinite," the *Demore* Court reasoned that such detention is constitutionally permissible because it in fact has a definitive end-point: the end of removal proceedings.[3] *Id.* at 529. The same is true here. Furthermore, despite Odon's argument that he is not a flight risk or danger to community, *Demore* held that immigration authorities can deny bond to detainees "even without a finding of flight risk" or dangerousness *Id.* at 524-25.

> *Held:* …
> Congress, justifiably concerned with evidence that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings. In the exercise of its broad

---

[3] *But see Alcan v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 1:25-CV-961, 2026 WL 472333, at *4 (S.D. Ohio Feb. 19, 2026) ("if Congress mandates detention pending a removal determination, then the Constitution arguably imposes some obligation on the Executive to ensure that the removal determination occurs in a reasonably prompt fashion. That is, if Alcan's pre-removal detention goes on too long, constitutional concerns may well arise.")

[9]

power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. *Mathews v. Diaz,* 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478. Although the Fifth Amendment entitles aliens to due process in deportation proceedings, *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1, detention during such proceedings is a constitutionally valid aspect of the process, *e.g., Wong Wing v. United States,* 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140, even where, as here, aliens challenge their detention on the grounds that there has been no finding that they are unlikely to appear for their deportation proceedings, *Carlson v. Landon,* 342 U.S. 524, 538, 72 S.Ct. 525, 96 L.Ed. 547.

*Id.* at 511. This Court concludes that such congressional authority likewise extends to illegal aliens who are not "clearly and beyond a doubt entitled to be admitted," because such aliens also present a risk of failing to appear for a deportation hearing. 8 U.S.C. § 1225(b)(2)(a).

Odon argues that, regardless of what statutory authority the government now purports to detain him under, his prior release on his own recognizance means "the government cannot re-detain him and allege he is now detained under" a different statutory authority. This is identical to the argument raised by the petitioner in *Phurtskhvanidze v. Field Off. Dir. of Enf't & Removal Operations, Detroit Field Off., Immigr. & Customs Enf't*, No. 1:25-CV-827, 2026 WL 160833 (S.D. Ohio Jan. 21, 2026). Again, the Court finds the reasoning of Judge Cole persuasive in rejecting this basis for relief:

[Phurtskhvanidze] argues that Respondents cannot detain him under § 1225(b)(2) because they already previously detained and released him on his own recognizance under § 1226(a) back in 2022. ([Doc. 8] at #124). Basically, he argues that the government cannot change horses midstream to deprive him of rights—in this case, a bond hearing—that

[10]

attached when the government previously granted him bond. (*Id.* at #124–26). Phurtskhvanidze appears to rest this argument on two grounds: (1) Supreme Court precedent requiring "that changes in position by administrative authorities require the issuance of a new decision," (*id.* at #126 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22–23 (2020))), and (2) that his "release under § 1226(a) 'created a reliance interest in [his] continued freedom, so long as [he] abided by the terms of [his] release,'" (*id.* (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-6924, 2025 WL 2637503, at \*8 (N.D. Cal. Sep. 12, 2025))).

As to the first, this Court addressed a similar point in *Lucero*, explaining that… the petitioner had not raised an Administrative Procedures Act challenge. *Lucero*, 2025 WL 3718730, at \*5. The same is true here. And inasmuch as Phurtskhvanidze is arguing that the government citing § 1225(b)(2) as the source of authority for his detainment is a "belated justification," *Regents*, 591 U.S. at 23, the Court is unconvinced. Petitioner was arrested and detained *after* ICE changed its policy and the BIA adopted the same position. (Doc. 1, #6–7, 10).

Turning to the second point, Phurtskhvanidze is correct that some district courts have (at least at the preliminary injunction stage) found that aliens released on bond under § 1226(a) have a liberty interest that "cannot be unilaterally abrogated without process by the Government simply 'switching tracks'" to § 1225(b)(2) detainment. *Salcedo Aceros*, 2025 WL 2637503, at \*8… The Court disagrees… That Phurtskhvanidze was granted rights under one statutory provision does not mean that *other* provisions of the code cannot be enforced against him, so long as those provisions lawfully apply. So, for Phurtskhvanidze to prevail, he would need to allege that § 1225(b)(2)'s procedures were not followed or that *those* procedures violate his due process rights in some way. Absent that, the government detaining him under that provision does not violate his Fifth Amendment due process rights. And if he is instead arguing that the government's policy *shift*, in and of itself, violates his rights, the better vehicle for such an argument, as discussed above and in *Lucero*, is a challenge under the APA.

[11]

*Id.* at \*1-2. In sum, because Odon is unambiguously subject to the mandatory detention provision in § 1225(b)(2), his challenge to the Respondents' decision to enforce that provision describes, at best, a challenge under the Administrative Procedure Act. Therefore, Odon has not established grounds for relief based on a violation of his right to due process.

### CONCLUSION

For the reasons stated above, the Court finds no colorable grounds to grant the petition for writ of habeas corpus. The Court therefore **ORDERS** that the petition be **DISMISSED** without prejudice, to allow Odon to seek relief as a potential class member pursuant to *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: May 8, 2026

[12]